UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MARK NELSON,

                  Plaintiff,

  -against-

FRESH DIRECT, LLC,
MELANIE KIRK, individually,
DANIEL LUGO, individually,
EUGENE WASHINGTON, individually,
VICENTE MALAVE, individually,
HARRISON CRAWFORD, individually,
ATIF NADEEM, individually,

                  Defendants.
-----------------------------------------------------------X

Civil Case No: 17-cv-5945

Plaintiff Demands a
Trial by Jury

**COMPLAINT**

Plaintiff, MARK NELSON (hereinafter referred to as "Plaintiff" or "NELSON"), by and through his attorneys, DEREK SMITH LAW GROUP, PLLC, hereby complains of Defendant FRESH DIRECT, LLC, (hereinafter referred to as "Defendant" or "FRESH DIRECT"), Defendant MELANIE KIRK (hereinafter referred to as "KIRK"), Defendant DANIEL LUGO (hereinafter referred to as "LUGO"), Defendant EUGENE WASHINGTON (hereinafter referred to as "WASHINGTON"), Defendant VICENTE MALAVE (hereinafter referred to as "MALAVE"), Defendant HARRISON CRAWFORD (hereinafter referred to as "CRAWFORD"), and Defendant ATIF NADEEM (hereinafter referred to as "NADEEM") and (hereinafter collectively referred to as "Defendants") upon information and belief, as follows:

## NATURE OF CASE

Plaintiff MARK NELSON complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"), 42 U.S.C. §1981, the Administrative

1

Code of the City of New York and the laws of the State of New York, based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966), and 28 U.S.C. § 1367 seeking declaratory relief and damages to redress the injuries Plaintiff has suffered as a result of, *inter alia*, race discrimination, national origin discrimination, retaliation and wrongful termination by Defendants.

## **JURISDICTION AND VENUE**

1. Jurisdiction of this action is conferred upon this Court as this case involves a Federal Question under Title VII.  The Court also has jurisdiction pursuant to 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto.

2. Additionally, the Court has supplemental jurisdiction under the State and City laws of New York.

3. Around March 13, 2015, Plaintiff submitted a Charge of Discrimination to the U.S. Equal Employment Opportunity Commission ("EEOC").  The federal charge number is 520-2015-02422.  Plaintiff never received a notice of right to sue from the EEOC or any other information regarding the disposition of this charge.

4. Around September 7, 2015, Plaintiff submitted a second Charge of Discrimination to the U.S. Equal Employment Opportunity Commission ("EEOC").  Plaintiff never received a charge number, notice of right to sue from the EEOC, or any other information regarding the disposition of this charge.

5. Around January 5, 2016, Plaintiff received a telephone call from Sarina Shaver, an investigator with the EEOC.  Ms. Shaver informed Plaintiff that the two individuals who were handling the previous charges Plaintiff had filed with the EEOC had been terminated from the EEOC.  Ms.

Shaver said that her review of the charges indicated that Plaintiff had grounds to potentially file a lawsuit against Defendants, and she asked Plaintiff how he wished to proceed. Plaintiff advised Ms. Shaver that he believed the company was building a case to terminate his employment, and he wished to proceed with the prosecution of his charges. Ms. Shaver advised Plaintiff that she would initiate an investigation and the allegations from his charges would be combined into charge number 520-2016-00035.

6. Around December 23, 2016 Plaintiff submitted an Amended Charge of Discrimination to the U.S. Equal Employment Opportunity Commission ("EEOC") with respect to his charge number 520-2016-00035.

7. Around July 14, 2017, Plaintiff received a Right to Sue Letter from the EEOC for his charge number 520-2016-00035.

8. Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letter.

9. Venue is proper in this court, as the events giving rise to this action arose in Queens County, within the Eastern District of New York.

## PARTIES

10. Plaintiff, Mark Nelson, is an African-American male, who at all times material resided in New York, county of Richmond.

11. At all times material, Defendant FRESH DIRECT was and is a foreign limited liability company duly existing by virtue of the laws of the State of Delaware, that does business in the State of New York, with its principle place of business at 23-30 Borden Avenue, Long Island City, New York, 11101.

12. At all times material, Plaintiff was employed by Defendant FRESH DIRECT.

13. At all times material, MELANIE KIRK (hereinafter referred to as "KIRK") was and is the Vice President of Human Resources for Defendant FRESH DIRECT.

14. At all times material, Defendant KIRK had supervisory authority over Plaintiff with regard to his employment.

15. At all times material, DANIEL LUGO (hereinafter referred to as "LUGO") was a manager for Defendant FRESH DIRECT.

16. At all times material, LUGO had supervisory authority over Plaintiff with regard to his employment.

17. At all times material, EUGENE WASHINGTON (hereinafter referred to as "WASHINGTON") was and is a supervisor for Defendant FRESH DIRECT.

18. At all times material, WASHINGTON had supervisory authority over Plaintiff with regard to his employment.

19. At all times material, VICENTE MALAVE (hereinafter referred to as "MALAVE") was a manager for Defendant FRESH DIRECT.

20. At all times material, MALAVE had supervisory authority over Plaintiff with regard to his employment.

21. At all times material, HARRISON CRAWFORD (hereinafter referred to as "CRAWFORD") was an employee of Defendant FRESH DIRECT.

22. At all times material, Defendant ATIF NADEEM (hereinafter referred to as "NADEEM") was a supervisor for Defendant FRESH DIRECT.

23. At all times material, ATIF had supervisory authority over Plaintiff with regard to his employment.

## MATERIAL FACTS

24. Plaintiff is seeking damages to redress the injuries that Plaintiff has suffered as a result of being discriminated against by his employer on the basis of his race and national origin, together with a hostile work environment, retaliation and unlawful termination.

25. Plaintiff, Mark Nelson, is an African-American male, who at all times material resided in New York, county of Richmond.

26. Plaintiff began his employment with Defendant FRESH DIRECT as an order picker in the Produce Department, around January of 2014. Plaintiff performed well and was promoted to a position in the Shipping Department as a loader, and then was promoted again around September 22, 2014, to the position of IT Technician in the IT Department. Plaintiff was one of two African- Americans in the IT Department, which had approximately twenty employees.

27. Almost immediately, Plaintiff was singled out by his supervisors, Defendant DANIEL LUGO and EUGENE WASHINGTON because of Plaintiff's race and national origin. Around the end of October 2014, Plaintiff asked Defendant WASHINGTON to provide him with proper training. Despite Plaintiff requesting proper training, he was not provided proper training.

28. Rather than provide sufficient training and direction to Plaintiff, Defendants WASHINGTON and LUGO allowed Plaintiff to incorrectly program the THEOTEK sorters, and would send another technician to program those sorters correctly. This went on for approximately 90 days, and then one week before Plaintiff's evaluation, around March 10, 2015, Defendant LUGO advised Plaintiff for the first time that he had been programming the THEOTEK scanners and sorters incorrectly. Defendant LUGO then gave Plaintiff a low rating on his performance evaluation. Defendants LUGO and WASHINGTON set Plaintiff up to fail. In stark contrast, proper training was provided to other non-African American employees.

29. Around March 16, 2015, Defendant LUGO singled Plaintiff out again and gave Plaintiff a first warning with a corrective action form for allegedly failing to follow instructions by failing to ticket a service call for the meat department. Other non-African American employees were not singled out and given corrective action forms for similar minor mistakes.

30. Around March 22, 2015, Plaintiff discovered a letter drafted by Defendant WASHINGTON, ostensibly to be sent to HR, falsely accusing Plaintiff of communicating an "indirect threat" of physical violence against Mr. Washington, Mr. Lugo, and Mr. Sebastian Rubio. Defendant WASHINGTON singled Plaintiff out in stark contrast to his fellow non-African American co-workers.

31. Around March 25, 2015, Plaintiff raised a concern to HR regarding the letter drafted by Defendant WASHINGTON, falsely accusing Plaintiff of making indirect threats of physical violence. The matter was investigated, and Plaintiff disproved the false allegations, leading to the matter being dismissed as not credible.

32. Around May 13, 2015, Plaintiff filed a charge of discrimination with the EEOC against Defendant Fresh Direct alleging discrimination based on race and national origin, because of the way in which the Defendants singled Plaintiff out in stark contrast to his fellow non-African American co-workers.

33. Around June 30, 2015, Defendant LUGO issued Plaintiff another corrective action form (second warning) alleging failure to follow instructions. Defendant LUGO accused Plaintiff of failing to follow instructions because he did not replace a printer as requested, as well as altering a service ticket. However, Plaintiff explained to Defendant LUGO that due to a miscommunication Plaintiff had repaired a different printer, and Defendant LUGO instructed Plaintiff to simply correct the service ticket to reflect the printer that Plaintiff had repaired.

Nevertheless, Plaintiff was written up. Plaintiff was singled out in stark contrast to his fellow non-African American co-workers.

34. Plaintiff was discriminated against because of his race and national origin, and retaliated against for having filed a charge of discrimination with the EEOC.

35. Around September 6, 2015, Defendant LUGO again issued Plaintiff a false performance warning. Plaintiff was again singled out in stark contrast to his fellow non-African American co-workers.

36. Plaintiff was discriminated against because of his race and national origin, and retaliated against for having filed a charge of discrimination with the EEOC.

37. Around September 7, 2015, Plaintiff filed a second charge of discrimination with the EEOC, alleging discrimination based on race and national origin because Plaintiff was singled out for disciplinary action, in stark contrast to his fellow non-African American co-workers.

38. Around September 14, 2015, Plaintiff was issued a false verbal warning. Plaintiff was again singled out in stark contrast to his fellow non-African American co-workers.

39. Plaintiff was discriminated against because of his race and national origin, and retaliated against for having filed a second charge of discrimination with the EEOC.

40. Around November 11, 2015, Plaintiff received a quarterly performance review which did not adequately reflect Plaintiff's performance, and again singled Plaintiff out in stark contrast to Plaintiff's non-African American co-workers. In response, Plaintiff prepared a letter to Defendant MELANIE KIRK, Vice President of HR, to express his concern that Defendant WASHINGTON was creating a hostile work environment for Plaintiff and was on a campaign to terminate Plaintiff's employment. Plaintiff wrote, "Dear Mrs. Melanie Kirk, I have been a faithful employee in this company for the past l year. My time at the company has been a good one so

far, but now a problem has crept up, which threatens to disrupt my otherwise peaceful time at the company.  This letter is regarding the behavior of my immediate supervisor, Mr. Gene Washington.  Mr. Gene Washington is the Supervisor at the Technologies Services Department and for some reason of his own, he has singled me out to harass." Plaintiff went on to detail the instances in which he was singled out, including his quarterly evaluation.  Plaintiff specifically informed Defendant KIRK that "My supervisor Mr. Gene Washington told me and I quote 'I'm going to shoot from the hip here, I want to get rid of you.'"  Plaintiff went on to detail a number of other instances in which Defendants LUGO and WASHINGTON singled him out, and Plaintiff said, "Mr. Danny Lugo has used hearsay as a basis for my last two performance evaluation. No investigation by management was ever done to determine the degree of the statements given as it applies to my evaluation. *I was given a poor performance evaluation yet I consistently outperformed my peers, who have been given a positive evaluations* (emphasis added." Plaintiff finished off the letter by saying, "I feel that I was singled out and left to fail." However, despite Plaintiff's specific complaints of discrimination and hostile work environment, no corrective action was ever taken.

41. Around January 5, 2016, Plaintiff received a telephone call from Sarina Shaver, an investigator with the EEOC.  Ms. Shaver informed Plaintiff that the two individuals who were handling the previous charges Plaintiff filed with the EEOC had been fired.  Ms. Shaver said that her review of the charges indicated that Plaintiff had grounds to potentially file a lawsuit against Fresh Direct, and she asked Plaintiff how he wished to proceed.  Plaintiff advised Ms. Shaver that he believed the company was building a case to terminate his employment, and he wished to proceed with the prosecution of his charges.  Ms. Shaver advised Plaintiff that she would initiate an investigation and the allegations would be combined into charge number 520-2016-00035.

42. Around Mid-March of 2016, Plaintiff met with Defendant VICENTE MALAVE and Defendant's employee Robert Marte and expressed his concerns about working the night shift under Defendant WASHINGTON's supervision given his animus towards Plaintiff and the hostile work environment that he created.

43. Around May of 2016, Defendant's employee, Defendant HARRISON CRAWFORD, who was from Belize, told Plaintiff, "*That is why we treat the American Blacks the way we do, because you guys are always in jail, getting high and leaving your baby mammas, and you don't look at education the way we do.*"

44. The next day, around May of 2016, Plaintiff emailed Defendant KIRK complaining about the comments from Defendant CRAWFORD, and explicitly stating what Defendant CRAWFORD had said to Plaintiff. Defendant KIRK simply said, "we are going to let that go" and failed to take any corrective action.

45. Around early-June of 2016, Defendant ATIF NADEEM said to Plaintiff, "*we cannot even use the word 'Nigger' around you anymore*."

46. Defendants discriminated against Plaintiff based on his race and national origin and created a hostile work environment for Plaintiff.

47. Around June 15, 2016, Plaintiff was detained by police based on false accusations. The criminal case associated with this detention was ultimately dismissed. At the time of his false arrest, Plaintiff called Defendant MALAVE in order to explain the situation and let him know he would not be able to get to work the next day or for the foreseeable future until he was released. Defendant MALAVE did not answer the phone call, but texted Plaintiff, "Sorry, I can't talk right now, call back later." Plaintiff replied by text, "Being dertated buy (sic) police unable to make it to work." Defendant MALAVE replied, "Mark? Am I missing something? I don't have you

scheduled to work today."

48. Two days later, around June 17, 2016, Defendant MALAVE emailed Plaintiff saying, "Mark, we have not heard from you since Wednesday and you have been a no call, no show for the last 2 days. Please do not come to work over the weekend but report to Human Resources on Monday at 10:30 a.m." Plaintiff did not receive this email because he was still being detained by the police.

49. Around June 25, 2016, Plaintiff was wrongfully and unlawfully terminated by Defendants because of his race and national origin, as well as in retaliation for having filed charges of discrimination with the EEOC, and having consistently complained about the discrimination Plaintiff was subjected to.

50. When Plaintiff was released from incarceration around July 22, 2016, Plaintiff immediately contacted Defendant's human resources department and spoke to Defendant MELANIE KIRK that same day, to ask about his job. Plaintiff said to Defendant KIRK, "I am calling to check in on my status with the company." Defendant KIRK responded, "you were terminated." Plaintiff responded, "but I thought that if I contacted my supervisor like I did it would not lead to my termination." Defendant KIRK replied, "yes, but you were a no-call no-show." Plaintiff said, "well I actually did reach out to the manager. I have a text showing that I called him first and he responded in a text saying I cannot talk and I explained that I was being detained by the police and would not be able to report to work. Defendant Kirk said, "Well it is too late now, a letter has already been mailed to you with your termination." The Plaintiff received no prior warnings for failing to call in an absence or failing to report to work.

51. After his termination, Plaintiff applied for unemployment benefits, and the Defendant contested Plaintiff's unemployment application, citing no-call no-show as the grounds for Plaintiff's

termination. Around August 31, 2016, a hearing was held before Administrative Law Judge ("ALJ") Alison Farrara. During the hearing, Defendant MALAVE was questioned and testified that Plaintiff did not call in his absence, and that he did not know the reason that Plaintiff did not report to work from June 16, 2016 through June 25, 2016. When further questioned by Plaintiff, Defendant MALAVE testified under oath that there was no communication from Plaintiff informing Defendant MALAVE of the situation and that Plaintiff never called him. Plaintiff then identified for the record a copy of the text messages described in Paragraph 47 of this Complaint, and Defendant MALAVE admitted that the exchange took place.

52. As a result of the hearing held on September 22, 2016, Plaintiff was awarded unemployment benefits. In her decision, ALJ Farrara focused on the fact that, "while the employer contends that the claimant failed to call in his absences, it is undisputed that the claimant sent his supervisor a text message on June 15, 2016, advising him that he (the claimant) had been detained by the police and was unable to report to work." ALJ Farrara further noted, "the claimant's uncontroverted and undisputed testimony that he had never received a prior warning for failing to call in an absence and failing to report to work." Finally, ALJ Farrara found it, "significant to note that on the same day he was released from jail, the claimant contacted the employer's human resources department about his employment."

53. Around December 23, 2016 Plaintiff filed an amended charge to his charge number 520-2016-00035, to add an allegation of retaliation.

54. The Defendants discriminated against Plaintiff on the basis of his race and national origin and subjected Plaintiff to a hostile work environment.

55. Defendants retaliated against Plaintiff for having complained about race and national origin discrimination, as well as for having filed charges of discrimination with the EEOC.

11

56. Defendants wrongfully terminated Plaintiff on the basis of his race and national origin, and in retaliation for having complained about such discrimination and having filed charges of discrimination with the EEOC.

57. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

58. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

59. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation, which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

60. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendants.

61. The above are just some examples of some of the unlawful discrimination and retaliation to which Defendants Subjected Plaintiff.

62. Defendants' actions constituted a continuing violation of the applicable federal, state and city laws.

63. Plaintiff hereby demands reinstatement to his original position.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## (Not Against Individual Defendants)

64. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

65. Title VII states in relevant part as follows: SEC. 2000e-2. [Section 703] (a) Employer practices, It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . .

66. Defendant FRESH DIRECT engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by allowing race discrimination, national origin discrimination and a hostile work environment.

### AS A SECOND CAUSE OF ACTION
### FOR RETALIATION UNDER TITLE VII
### (Not Against Individual Defendants)

66. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

67. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

"(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

68. Defendant FRESH DIRECT engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to the unlawful employment practices of Defendants.

## AS A THIRD CAUSE OF ACTION
## DISCRIMINATION AND RETALIATION IN VIOLATION
## OF 42 U.S.C. § 1981
## (Against All Defendants)

69. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

70. 42 U.S.C. Section 1981 states as follows, "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

71. Section 1981 further states that, "For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

72. Defendants discriminated against Plaintiff in violation of the rights of Plaintiff as afforded to him by the Civil Right Act of 1866, 42 U.S.C. 1981.

73. By the conduct described above, Defendants intentionally deprived Plaintiff, an African-American male, of the same rights as are enjoyed by non-African American citizens, to the creation, performance, enjoyment and all benefits and privileges of his employment relationship with Defendants.

74. As a result of Defendants' discrimination in violation of Section 1981, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling him to injunctive and equitable monetary relief, and has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendants' actions, thereby entitling him to compensatory damages.

75. Defendants acted with malice or reckless indifference to the rights of the above-named African-American male, thereby entitling him to an award of punitive damages.

76. To remedy the violations of the rights of Plaintiff secured by Section 1981, Plaintiff requests that the Court award the relief prayed for below.

### AS A FOURTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### NEW YORK STATE LAW
### (Against All Defendants)

77. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

78. Executive Law §296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

79. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of his race and national origin and creating a hostile work environment.

80. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law § 296.

**AS A FIFTH CAUSE OF ACTION<br>
FOR DISCRIMINATION UNDER<br>
NEW YORK STATE LAW<br>
(Against All Defendants)**

81. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

82. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

83. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the discriminatory behavior as stated herein.

**AS A SIXTH CAUSE OF ACTION<br>
FOR RETALIATION UNDER<br>
NEW YORK STATE LAW<br>
(Against All Defendants)**

84. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

85. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

86. Defendants engaged in an unlawful discriminatory practice by wrongfully retaliating against the Plaintiff.

### AS A SEVENTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

87. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

88. The Administrative Code of City of NY §8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

89. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, by creating and maintaining discriminatory working conditions and a hostile work environment, and otherwise discriminating against Plaintiff because of his race and national origin.

90. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

### AS AN EIGHTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

91. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

92. The New York City Administrative Code Tide 8, §8-107(1)(e) provides that it shall be

unlawful discriminatory practice: "For an employer . . , to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

93. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8-107(1) (e) by discriminating against Plaintiff because of his opposition to the unlawful employment practices of Plaintiffs' employer.

### AS A NINTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

94. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as is fully set forth at length.

95. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

96. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

### AS A TENTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against All Defendants)

97. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as if fully set forth at length.

98. Section 8-107(19), entitled Interference With Protected Rights provides that "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section."

99. Defendants violated the above section as set forth herein.

### AS AN ELEVENTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (NOT AGAINST ANY INDIVIDUAL DEFENDANTS)

100. Plaintiff repeats and re-alleges each and every allegation made in the above paragraphs of this complaint as is fully set forth at length.

101. Section 8-107(13) entitled Employer Liability For Discriminatory Conduct By Employee, agent or independent contractor provides "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section." b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory

19

responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

102. Defendants violated the above section as set forth herein.

**WHEREFORE**, Plaintiff demands judgment against all Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues to be tried.

Dated: New York, New York
October 11, 2017

                                       DEREK SMITH LAW GROUP, PLLC
                                       Attorneys for Plaintiff

                         By: _____
                               Abraham Z. Melamed, Esq.
                               30 Broad Street, 35th Floor
                               New York, New York 10004
                               (212) 587-0760